# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LEANDRE WILEY, on behalf of
himself and on behalf of all
others similarly situated,

    Plaintiff,

v.                                             Case No.: 1:21-cv-01093-DAP

TRAVELCENTERS OF AMERICA, LLC

    Defendant.

_____/

# AMENDED CLASS ACTION
# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LeAndre Wiley, by and through the undersigned attorney, and on behalf of himself and the putative class set forth below, brings this Amended Class Action Complaint against TravelCenters of America, LLC ("Defendant"), including, subsidiaries, divisions and affiliates, under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

# PRELIMINARY STATEMENT

1. Defendant is a large, national full-service truck stop and travel center operators with locations throughout the United States.

2. Defendant routinely obtains and uses information in consumer reports to conduct background checks on applicants.

3. The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a consumer report for an employment purpose. Such use becomes

lawful if and only if the "user" – in this case Defendant – has complied with the FCRA's strict notice requirements. *See* 15 U.S.C. § 1681b(b)(3).

4. Defendant willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

5. Specifically, Defendant violated 15 U.S.C. § 1681b(b)(3) by denying employment opportunities to Plaintiff based in part or in whole on the results of Plaintiff's consumer report without first providing him notice and a copy of the report.

6. In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3) on behalf of an "Adverse Action Class" consisting of:

> **All applicants in the United States who (1) were subject to a consumer report provided to Defendant, (2) for whom, based in whole or in part on the information contained in those consumer reports, (3) there was entered into Defendant's computer system a code indicating that person was ineligible for hire, and (4) for whom Defendant did not provide the applicant with a copy of the consumer report at least five business days before the code was entered into its system, (5) who never started their employment with Defendant, and (6) for the five years preceding the date of this action.**

7. On behalf of himself and the putative class, Plaintiff seeks statutory damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

## PARTIES

8. Plaintiff is a consumer. Plaintiff applied for employment and was denied employment with Defendant and is a member of the putative Adverse Action Class.

9. Defendant is a corporation and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

10. This is an action for statutory damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

11. The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

12. Venue is proper in the United States District Court, Northern District of Ohio, Eastern Division, because TravelCenters of America, LLC is headquartered in Cuyahoga County, Ohio.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

### *Background Checks*

13. Defendant's uniform, national practice is to conduct background checks on many of its job applicants as part of a standard screening process.

14. Defendant does not perform these background checks in-house. Rather, Defendant relies on an outside consumer reporting agency ("CRA"), CredentialCheck, to obtain this information and report it to the Defendant. These

reports constitute "consumer reports" for purposes of the FCRA.

15. Defendant also provides CredentialCheck hiring criteria that Defendant expects CredentialCheck to apply to the results of its background checks. CredentialCheck completes a background-check report, then compares the report with Defendant's hiring criteria and assigns a grade or score to the report.

16. This process is commonly known as "adjudication" of reports by the CRA.

17. Based on the adjudication results, CredentialCheck applies grades of "discrepancy found" or "flagged." Defendant adopts CredentialCheck's adjudication grades wholesale and as their own, without meaningful review of those results.

18. Once the adjudication results are presented to Defendant electronically, Defendant views them and enters a code or designation in its computer system indicating the person is ineligible for hire.

19. At that point, Defendant considers the applicant ineligible for employment.

### *Plaintiff's Experience*

20. Plaintiff applied for employment with Defendant in July, 2020.

21. On or around July 22, 2020, Defendant extended a conditional offer of employment to Plaintiff. The offer was conditioned upon successfully passing

Defendant's background check process. On that same day, Defendant ordered Plaintiff's consumer report from CredentialCheck.

22. On July 23, 2020, CredentialCheck adjudicated Plaintiff's consumer report as "Flagged/Discrepancy."

23. Discovery will show on that same day, Defendant adopted CredentialCheck's adjudication without further review, causing Defendant to enter into its computer system a code or designation confirming Plaintiff's ineligibility for employment.

24. In reliance upon the conditional offer, Plaintiff quit his job.

25. On July 24, 2020, Plaintiff showed up for his first day of work. Plaintiff was informed he would not be commencing employment. When Plaintiff called the location manager, Danny [LNU], he was told "they would not be moving forward with his employment" because of his background check.

26. Plaintiff never began his employment with Defendant.

27. Defendant did not provide Plaintiff with a copy of his background check before it rescinded his conditional offer of employment in whole or in part because of his consumer report.

28. Defendant's failure to provide Plaintiff with pre-adverse action notice, including a copy of his consumer report was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

29. Defendant's failure to provide Plaintiff with pre-adverse action, including a copy of his consumer report at least five days before coding him as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3)(A)(i).

### *Plaintiff's Concrete Harm*

30. Defendant's failure to provide pre-adverse action notice injured Plaintiff in that he was deprived of information due to him at a particular time, and the ability to contest or discuss with Defendant the content of his consumer report.

31. These rights attach even if the reports were accurate, as courts regularly recognize that § 1681b(b)(3) entitles consumers to know the same information the employer is using to make its hiring decision and, even if the report contains no inaccuracies, to soften the brunt of negative information by discussing it preemptively with the employer before the hiring decision is made.

32. Defendant denied Plaintiff employment based in whole or in part on the content of his consumer report but did not first provide him with pre-adverse action notice, including a copy of his consumer report. Therefore, Defendant failed to satisfy the federally imposed requirements of § 1681b(b)(3)(A)(i). This resulted in informational injury to Plaintiff and class members.

33. Because Defendant failed to provide Plaintiff a copy of his consumer report, Plaintiff was deprived of the opportunity to see how his personal, sensitive

6

information was being reported by a consumer reporting agency.

34. Because Defendant failed to provide Plaintiff with a copy of his consumer report, Plaintiff was deprived of the opportunity to proactively address how his background was being reported to other potential employers.

35. Because Defendant did not provide Plaintiff with pre-adverse action notice and a copy of his consumer report, Plaintiff quit his job in anticipation of commencing employment with Defendant, causing him economic injury. If notice and the report had been provided, Plaintiff would not have quit his job.

36. Because Defendant did not provide Plaintiff with pre-adverse action notice and a copy of his consumer report, Plaintiff was denied the opportunity to review his report to confirm its accuracy or explain its contents to Defendant. If Plaintiff had been able to explain his consumer report to Defendant, he would have been hired.

37. After being rejected for employment, Plaintiff worried whether the information contained in his consumer report was accurate and how it would affect his prospects of employment elsewhere.

38. Plaintiff spent time researching his rights to obtain the information contained in his consumer report. This despite the fact that Defendant was required by the FCRA to provide consumers with copies of their reports and summary of rights before taking adverse actions against them. 15 U.S.C.

7

§ 1681b(b)(3)(A)(i).

39. Plaintiff had to engage counsel to obtain a copy of his consumer report from Defendant. This despite the fact that Defendant was required by the FCRA to provide consumers with copies of their reports before taking adverse actions against them. 15 U.S.C. § 1681b(b)(3)(A)(i).

40. The FCRA's protections regarding who may obtain consumer reports and how they may be used are real and substantive, not merely procedural. The violation alleged here is not just a technical requirement – Defendant had no right to take an adverse employment action against Plaintiff without first providing him notice of its intent, and a copy of his report.

41. Plaintiff and class members suffered additional concrete harm because of the adjudication of their reports. In taking such adverse actions against applicants before providing them with the notice and summary of rights demanded by § 1681b(b)(3)(A)(i), Defendant deprived Plaintiff and class members with information to which they were statutorily entitled at a particular time. This deprivation worked concrete harm on Plaintiff and members of the class.

42. Courts regularly recognize that violations of § 1681b(b)(3) work concrete harm on consumers. *See*, e.g., *Helwig v. Concentrix Corp.*, No. 1:20-cv-920, 2021 WL 1165719, at *3 (N.D. Ohio Mar. 26, 2021) (concluding that deprivation of notice before adverse action resulted in Article III harm, and citing

cases from the Third, Sixth, Seventh, and D.C. Circuits so holding).

43. This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Defendant) could obtain and use a consumer's personal information consumer report.

44. In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like him with respect to employer use of a consumer report for an employment adverse action.

45. Plaintiff and each putative class member has been substantively harmed and injured by Defendant in the deprivation of the congressionally mandated information.

46. Courts are also aligned in the conclusion that concrete harm results from the deprivation of notice even if the background report is accurate. *Hood v. Action Logistix, LLC*, No. 4:20-cv-978 RWS, 2021 WL 1143885, at *4 (E.D. Mo. Mar. 25, 2021) (concluding that "[a]n unsuccessful job applicant suffers a concrete harm when he is deprived of these [Section 1681b(b)(3)] rights—even if the information in the report is true and accurate," and collecting cases holding likewise).

47. That is because context is important, and being denied the ability to

see the report on which an employer is basing a negative hiring decision prevents consumers from being able to explain any negative information. *See id.* at *5 ("[T]he language of § 1681b(b)(3)(A) as well as the legislative history of the FCRA reflects clear congressional intent to make an individual's inability to review and respond to the contents of his consumer report before suffering an adverse employment action a redressable harm.")

48. Courts have also found 15 U.S.C. § 1681b(b)(3)(A) bears a "close relationship" with "common law privacy rights understood as being invaded by (a) unreasonable intrusion upon the seclusion of the other, (b) appropriation of another's name or likeness . . . (c) unreasonable publicity given to the other's private life, . . . or (d) publicity that unreasonably places the other in a false light before the public . . ." *Long v. S.E. Pennsylvania Transportation Auth.*, 903 F.3d 312, 319 (3rd Cir. 2018)(reasoning privacy torts "represent interference with an individual's ability to control her personal information . . . analogous to the injury here, which is the use of Plaintiff's personal information – their consumer reports – without Plaintiffs being able to see or respond to it.")

49. Plaintiff and the putative class members, all of whom were denied pre-adverse action notice, therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

## DEFENDANT ACTED WILLFULLY

50. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations. See, e.g. *Long.*, 903 F.3d 312 (3rd Cir. 2018).

51. Defendant obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

52. To ensure downstream compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

53. Upon information and belief, Defendant knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

54. Despite its certifications, Defendant knowingly violated 15 U.S.C. § 1681b(b)(3)(A)(i).

55. These requirements have been part of the fabric of the FCRA since Congress enacted it. Defendant has had decades by which to become compliant with this requirement, yet it has not done so.

56. Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

57. As a result of these FCRA violations, Defendant is liable to Plaintiff and to each putative class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

58. In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. §1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

> **All applicants in the United States who (1) were subject to a consumer report provided to Defendant, (2) for whom, based in whole or in part on the information contained in those consumer reports, (3) there was entered into Defendant's computer system a code indicating that person was ineligible for hire, and (4) for whom Defendant did not provide the applicant with a copy of the consumer report at least five business days before the code was entered into its system, (5) who never started their employment with Defendant, and (6) for the five years preceding the date of this action.**

59. <u>Numerosity</u>: The members of the putative class are so numerous that joinder of all Class members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and frequently relies on such information, in whole or in part, in the hiring process. Plaintiff is informed and believes that during the relevant time period, thousands of Defendant's prospective employees satisfy the definition of the putative class. Based on the number of putative class members, joinder is impracticable. The names and addresses of the Class members are identifiable through Defendant's records and published Class members may be notified of this action by mailed notice.

60. <u>Typicality</u>: Plaintiff's claims are typical of those of the members of the putative class. Defendant typically uses consumer reports to conduct background checks on prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other putative class members, and Defendant treated Plaintiff consistent with other putative class members in accordance with its standard policies and practices.

61. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the putative class, and has retained counsel experienced in complex class action litigation.

62. <u>Commonality</u>: Common questions of law and fact exist as to all

members of the putative class, and predominate over any questions solely affecting individual members of the putative class. These common questions include, but are not limited to:

    a.    whether Defendant uses consumer report information to conduct background checks on prospective employees;

    b.    whether Defendant provided applicants with notice and copies of their consumer reports before taking an adverse employment action against them;

    c.    whether Defendant's violation of the FCRA was willful;

    d.    the proper measure of statutory damages; and

    e.    the proper form of injunctive and declaratory relief.

63. This case is maintainable as a class action because prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendant. Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

64. This case is also maintainable as a class action because Defendant acted or refused to act on grounds that apply generally to the putative class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

65. Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct, which is described in this Amended Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative class do not have an interest in pursuing separate actions against the Defendant, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

66. Plaintiff intends to send notice to all members of the Putative Class to the extent required by the Federal Rules of Civil Procedure. The names and addresses of the Putative Class members are readily available from Defendant's records.

# COUNT I
## Failure to Provide Pre-Adverse Action Notice in Violation of FCRA
## 15 U.S.C. § 1681b(b)(3)(A)

67. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 13-39.

68. Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

69. Defendant violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with pre-adverse action notice, and a copy of the consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A).

70. The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

71. Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinions and case law existed.

72. Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100.00 and not more than $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

73. Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself, the putative class, prays for relief as follows:

    a. determining that this action may proceed as a class action;

    b. designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

    c. issuing proper notice to the putative class at Defendant's expense;

    d. awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

    e. awarding reasonable attorneys' fees and costs as provided by the FCRA.

# DEMAND FOR JURY TRIAL

Plaintiff and the putative class demand a trial by jury.

Dated this 18th day of August, 2021.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
*(Pro Hac Vice)*
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813.577.4761
Facsimile: 813.559.4870
medelman@forthepeople.com
*Attorney for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been provided via electronic transmission and/or via U.S. Mail on this 18th day of August, 2021, to the following:

Ryan Morley, Esq.
Morena Carter, Esq.
Elizabeth Carter, Esq.
LITTLER MENDELSON P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH 44114
rmorley@littler.com
mlcarter@littler.com
ecarter@littler.com
*Attorneys for Defendant*

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**