IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEANDRE WILEY, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 1:21-cv-01093 |
| | ) | |
| v. | ) | JUDGE:  DAN A. POLSTER |
| | ) | |
| TA OPERATING LLC d/b/a Travel Centers of America, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

On August 25, 2022, this Court preliminarily approved the FCRA class action settlement between Plaintiff, LeAndre Wiley ("Plaintiff"), and Defendant TCA Operating LLC d/b/a Travel Centers of America, ("Defendant"). [Dkt.19]. The Settlement resolved this action on a class-wide basis on behalf of a Class of two hundred and fifty-six (256) consumers defined as:

> **All U.S. resident individuals on whom Defendant obtained a consumer report for employment purposes between May 26, 2019 and July 22, 2021 and Defendant's records reflect that the consumer report contained an item of information coded as potentially disqualifying for employment with Defendant**.

[Dkt. 19]

1.      To compensate members of the Class, Defendant agreed to establish a reversionary Settlement Fund up to a maximum of $164,020.00 to pay Class

1

Members who timely submitted valid claims, the cost of providing notice to the Class and settlement administration costs.[1]  This is not the type of action where *cy pres* is necessary for any money remaining after payment to each Claiming Class Member.

> ***In re Polyurethane Foam Antitrust Litig*., 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016)** ("Despite its interloper origin, *cy pres* has been approved -- or at least tolerated -- by most circuits in the class-action context … The Sixth Circuit is a notable holdout, having never meaningfully addressed class-action *cy pres*. This Court must then cast outside this Circuit for guiding principles.")

> To approve the use of *cy pres* as a substitute for distributing statutory damages to individual class members, as Hoge proposes, is at odds with the damages scheme Congress provided in the FCRA. The statute provides aggrieved individuals a right to receive damages for unlawful disclosures of their credit reports. 15 U.S.C. §§ 1681b, 1681n. Congress provided that a defendant who accesses a consumer's credit report for a purpose not permitted by the FCRA must pay that consumer either actual damages or a range of statutory damages. **Replacing the payment of statutory damages to individual class members with a *cy pres* payment intended to provide indirect benefits to the class -- perhaps by a charitable contribution to a public interest organization focused on consumer rights -- changes this compensation statute to something quite different.** (Emphasis added)

> *Hoge v. Parkway Chevrolet, Inc.,* No. H-05-2686, 2007 U.S. Dist. *LEXIS 78596*, at *59 (S.D. Tex. Oct. 23, 2007) The Court finds that "the FCRA recognizes that a consumer suffers harm when their privacy is invaded and provides actual or statutory damages to redress that harm. **But under *cy pres*, the individual class member would not receive the compensation provided by the statute."** *Id.* (Emphasis added)

---

[1] If the Court grants Final Approval, approximately $76,600.00 will revert to Defendant after the costs of notice and administration, class counsel's attorney's fees and costs, and plaintiff's compensation for his service and execution of a general release are paid. Defendant will fund the Settlement Fund accordingly.

The Court ultimately concludes that "in light of these three factors, *cy pres* would not appear necessary to further the substantive policies of the FCRA." *Id.* at *62. ***See also Villagran v. Cent. Ford, Inc.,* 524 F. Supp. 2d 866, 886 (S.D. Tex. 2007) (same analysis).**

Class Counsel, by separate motion, also seeks payment from the fund for his reasonable attorneys' fees, costs and expenses incurred in the litigation and approval for payment to Plaintiff for his service to the Class and as compensation for releasing all claims against Defendant. [Dkt. 20].

## I.    CLAIMS ADMINISTRATION

American Legal Claims Services, with the Court's approval, delivered notice of the Settlement to the Class.  As detailed below, the Claims Rate was comparable to similar settlements, with no object ions or exclusions.    Thus, it can be concluded that the notice program was effective, and members of the Class were satisfied with the settlement.

On September 8, 2022, the Court-approved notice packets were mailed to the Class Members on the Class List. [Exhibit "1"- *Settlement Administrator Unkefer Declaration*, ¶ 5]. Additionally, a settlement website, (www.wileyfcrasettlement.com), was established and posted for Class Members to obtain information about the settlement. (*Id*., ¶ 11).

Class Members were able to file claims by mail or through the settlement website.  By the end of the claims deadline, twenty-seven (27) valid claims were received, a take rate equaling 10.55%. (*Id.* ¶ 10).  Not a single Class Member objected or opted-out of the Settlement. (*Id.,* ¶¶ 8, 9).

## II.   ARGUMENT

### A.   The Settlement Merits Final Approval

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)) ("*UAW*").  Recently, in *Gascho*, the Sixth Circuit re-iterated the seven factors guiding the Court's inquiry in determining whether a class action settlement should be approved: (1) "the risk of fraud or collusion;" (2) the "complexity, expense and likely duration of the litigation;" (3) the "amount of discovery engaged in by the parties;" (4) the "likelihood of success on the merits;" (5) the "opinions of class counsel and class representatives;" (6) the "reaction of absent class members;" and (7) "the public interest." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 276-77(6th Cir. 2016), *cert. denied*, 137 S. Ct. 1065 (2017) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007)).   Here, all seven *Gascho* factors support approving the Settlement.

4

### 1. The Risk of Fraud or Collusion

The first factor that the Court should consider in determining whether to grant final approval of the Settlement is the risk of fraud or collusion. *See Gascho*, 822 F.3d at 276-77. "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *26 (E.D. Mich. July 13, 2006). Here, the Settlement was obtained through an all day mediation session with Mr. Carlos Burruezo, an experienced and respected class action mediator. The Court should be satisfied there was no "fraud or collusion" in this action. Therefore, this factor weighs in favor of granting this Motion.

### 2. The Complexity, Risk and Duration of the Litigation

"[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Southeastern Milk Antitrust Litig.*, 2012 WL 2236692, at *3 (E.D. Tenn. June 15, 2012) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)); *see also Gokare v. Fed. Express Corp.*, 2013 WL 12094870, at *4 (W.D. Tenn. Nov. 22, 2013) (granting final approval, court noted settlement "secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs and uncertainty of protracted litigation"). "Although this factor requires 'some evaluation of the merits of the

dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *IUE-CWA*, 238 F.R.D. at 595.

If this litigation had continued, Plaintiff and the Settlement Class would have faced significant obstacles to obtaining a settlement under equal or better terms than those presently before the Court for approval.  Defendant had moved to dismiss the action and compel arbitration. [Dkt. 13].  If Defendant ultimately prevailed on its motion, there would be no class – its arbitration agreement contained a class action waiver.  Even if Plaintiff overcame Defendant's motion, Defendant would have contested any efforts to certify a class and would have challenged Plaintiff's and the absent class members' standing at the class certification phase.  If a class was to be certified, Defendant would most likely have filed an interlocutory appeal pursuant to Rule 23(f).  If the interlocutory appeal proved unsuccessful, Defendant would most likely have moved for decertification or appeal the class certification decision.  Any one of these challenges would have prolonged the litigation at considerable expense to Plaintiff and potentially resulted in no recovery for the Class Members.  Still further, prevailing on liability at trial would not ensure class-wide recovery.  Absent this settlement, to otherwise recover any statutory damages under the FCRA, Plaintiff and the Class Members would have to prove Defendant failed to comply with the statutory requirements and did so willfully. *See* 15 U.S.C. § 1681n(a); *Garland v. Memphis–Shelby County Airport Authority*, 2011 WL 13090678, at *4 (W.D. Tenn.

July 19, 2011) (recognizing proving willfulness places a heavy burden on a plaintiff). *See, e.g.*, *Schoebel v. Am. Integrity Ins. Co.,* 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case seeking statutory damages because alleged violation was not willful); *Lewis v. Southwest Airlines Co.*, 2018 WL 400778, at *5 (N.D. Tex. Jan. 11, 2018) (summary judgment for defendant on issue of willfulness).

In short, any one of the above challenges could have significantly prolonged the litigation at considerable expense and might have resulted in no recovery for Class Members.  With this Settlement, all such risk is eliminated, and Settlement Class Members are obtaining significant monetary awards.  This weighs in favor of approval.

### 3.  The Amount of Discovery Engaged in By the Parties

Class Counsel and Defendant engaged in informal discovery. Plaintiff's counsel, experienced in FCRA class action litigation, had sufficient information to determine the value of the case and reach the conclusion that Settlement is a fair compromise.  *See In re Regions Morgan Keegan Securities, Derivative, and ERISA Litig.*, 2016 WL 8290089, at *5 (W.D. Tenn. Aug. 2, 2016).  As such, this factor weighs in favor of granting final approval.

### 4.  Likelihood of Success on Merits Weighed Against Relief Obtained

The fourth factor is the likelihood of success on the merits weighed against the relief obtained by the settlement. *See Gascho*, 822 F.3d at 276-77; *see also Int'l Union, United Auto., Aerospace, and Agr. Implement Workers*, 497 F.3d at 631 (recognizing that a court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." (internal quotation marks and citations omitted)).  Generally, class action settlements are favorable to courts because "[e]xperience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict[.]" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).  Therefore, settlements can still be fair, reasonable, adequate, and worthy of court approval when they do not provide the full relief that may be awarded at trial. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("The fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement.")

 For the reasons previously detailed, Plaintiff would have to overcome several significant obstacles to obtain relief for the Settlement Class.  By resolving the action, Plaintiff removed risk from the equation and secured significant payments to the Settlement Class. In fact, the monetary benefits offered

to Settlement Class Members exceed the "fair and reasonable" standard. Specifically, the gross award exceeds $640.00 per person, 64% of the maximum statutory damages available under the statute; each Settlement Class Member will be receiving checks of approximately $335.00 after attorney's fees, costs and the cost of notice and administration are deducted. This weighs heavily in favor of approval.

### 5. Opinion of Class Counsel

As elaborated herein and in his Declaration, Class Counsel believes the Settlement is in the best interest of the Class and merits approval by the Court. [Dkt. 20-2 - *Edelman Decl.*, ¶¶ 13, 14]. Class Counsel's approval and endorsement of the Settlement also weighs in favor of approval. *See Olden v. Gardner*, 294 F. App'x 210, 219 (6th Cir. 2008) (a court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *9 (E.D. Mich. May 20, 2013) ("Plaintiffs' counsel's informed and reasoned judgment and their weighing of the relative risks and benefits of protracted litigation are entitled to deference.")

Class Counsel and Plaintiff have brought this Motion for Final Approval, unopposed by Defendant, because they believe the Settlement is a fair, reasonable and adequate result for Settlement Class Members. Thus, this factor weighs in favor of approving the settlement.

### 6. The Reaction of Absent Class Members

The sixth factor is the reaction of absent class members. *Gascho*, 822 F.3d at 276-77. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem*, 218 F.R.D. at 527; *see also, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair"); *Myszka v. National Collegiate Scouting Ass'n, Inc.*, 2014 WL 1364468, at *1 (N.D. Ill. Mar. 19, 2014) (finding that the complete lack of objections to the settlement supports final approval); *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *6 (S.D. Cal. Aug. 18, 2015) ("The reaction of Class Members can be characterized as positive.  No objections have been filed, and there have been only 2 requests for exclusion.").  Here, not a single Class Member objected or asked to be excluded from the Settlement.  Moreover, "[t]hat the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem*, 218 F.R.D. at 527.  Thus, the reaction of absent class members to the Settlement supports final approval.

**7. The Public Interest**

There is an "overriding public interest in favor of settlement of class action lawsuits." *Manners v. American General Life Insurance Co.*, 1999 WL 33581944, at *19 (M.D. Tenn. Aug. 11, 1999) (quoting *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992)); *Gascho* at 287 (6th Cir. 2016)("Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior – particularly when the injuries are too small to justify the time and expense of litigation – and as private law enforcement regimes that free public sector resources.") Here, the public interest is served by the Settlement. Although Defendant denies its practices were ever unlawful or deficient, it has enhanced its practices regarding the use of consumer reports for employment purposes to better ensure its pre-adverse action procedures are FCRA compliant. Finally, the existence of the Settlement in the public record serves as a deterrent to other users of consumer reports for employment purposes and consumer reporting agencies. Thus, the Settlement also benefits future employees and applicants, and provides compliance guidance to employers and consumer reporting agencies. Therefore, this factor weights in favor of final approval.

### III. PLAINTIFF'S COUNSEL AND PLAINTIFF HAVE ADEQUATELY REPRESENTED THE CLASS

Plaintiff, Mr. LeAndre Wiley, is the reason the Settlement Class Members are obtaining monetary awards. Prospectively, future applicants and employees

11

will derive benefit from Plaintiff's endeavors. For the duration of the litigation, Plaintiff was actively involved – reviewing documents, participating in negotiations and providing his insight into Defendant's practices. [Dkt. 20-2 - *Edelman Decl.*, ¶ 15].

Plaintiff's counsel is experienced in FCRA class action litigation, having served as class counsel in over a dozen similar class actions. [*Id.*, ¶ 6]. In this matter, Plaintiff's counsel effectively and efficiently litigated on behalf of Plaintiff and the Class against sophisticated and experienced defense counsel. Ultimately, through his efforts, Plaintiff's counsel secured a favorable outcome for Settlement Class Members.

Thus, Plaintiff and Plaintiff's counsel have adequately represented the Class and should be confirmed as Class Representative and Class Counsel, respectively.

## IV. NOTICE TO THE CLASS SATISFIED DUE PROCESS

"Due process requires that notice to the class be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'" *Vassalle*, 708 F.3d at 759 (quoting *UAW*, 497 F.3d at 629). "All that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.*

Here, the Class Notice previously approved by the Court, satisfies both Rule 23(e)(1) and due process. It plainly described the nature of the action; the definition of the Class; the claims in case; the details of the Settlement; Class Members' right to object to the settlement; the adequacy of representation; the attorneys' fees, costs, and expenses to be requested by Class Counsel; the deadline for submitting objections; the binding effect of a judgment; and Class Members' right to appear and be heard at a fairness hearing. *See, e.g.*, *In re Regions Morgan Keegan Securities*, 2013 WL 12110279, at *4 (W.D. Tenn. Aug. 6, 2013) (notice sufficient where it "describes the nature of the class action, the proposed settlement terms, the proposed Plan of Allocation, and the requested attorney's fees and expenses in detail" and it was "written to be understood by non-attorneys."). Thus, the Court should find the Class Notice met the requirements set forth in Rule 23(e)(1) Fed. R. Civ. Pro., protected the due process rights of absent Class Members, and constituted the best practicable notice under the circumstances.

Here, as detailed in the Settlement Administrator's declaration, the Court-approved Notice was initially mailed to two hundred fifty-six (256) Class Members, informing them of the Settlement. The Notice provided detailed information to the Class concerning: (a) the proposed Settlement; (b) the rights of Class Members, including the right and manner in which to make objections; (c) the background of the litigation; (d) the benefit to the Class from the Settlement;

(e) the request for attorneys' fees and reimbursement of litigation expenses; (f) the Settlement hearing to take place before this Court; and (g) the examination of Court records should any Class Member elect to do so.  As such, the Notice fairly apprised the potential Class Members of the Settlement and their individual rights with respect thereto.  Furthermore, the parties established a website (www.wileyfcrasettlement.com) for inquires and further information concerning the Settlement.  Twenty-seven (27) Class Members submitted valid and timely claims forms.  As noted above, the notice program satisfied the dictates of Rule 23 and due process requirements, and further supports final approval of the Settlement.  Fed. R. Civ. P. 23(e), advisory committee's note (2018).

All Class Members have the same claim as other members.  The Settlement Payment to a Settlement Class Member equals a *pro rata* share of the net Settlement Fund, which will be calculated by dividing the net Settlement Fund by the number of members of the Settlement Class.  And, the Settlement's release affects Class Members the same way.  As such, this factor supports final approval of the Settlement. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018).

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court issue an Order granting final approval of the Settlement.

Dated this 12th day of December, 2022.

Respectfully submitted,

**MARC R. EDELMAN**
Florida Bar No. 0096342
medelman@forthepeople.com
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street,
Suite 700
Tampa, Florida 33602
(813) 223-5502 – telephone
(813) 223-5402 – facsimile

*Counsel for Plaintiff*

*/s/ Ryan J. Morley*
  Ryan J. Morley (0077452)
  rmorley@littler.com
  Morena L. Carter (0088825)
  mlcarter@littler.com
  Elizabeth B. Carter (0098694)
  ecarter@littler.com
  Christian D. McFarland (0097756)
  cmcfarland@littler.com

**LITTLER MENDELSON P.C.**
Key Tower
127 Public Square
Suite 1600
Cleveland, OH  44114-9612
Telephone: 216.696.7600
Facsimile:  216.696.2038

Attorneys for Defendant
TA Operating LLC d/b/a
TravelCenters of America

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 12th day of December 2022, the foregoing *Memorandum in Support of Joint Motion for Final Approval of Class Action Settlement* was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this document through the Court's electronic filing system.

*/s/ Ryan J. Morley*
Ryan J. Morley

One of the Attorneys for Defendant
TA Operating LLC d/b/a TravelCenters of America

4888-7553-9779.1 / 048210-1088

16